**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 08-165 (CKK)** |
| | : | |
| **GEORGE A. ABRAHAM,** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S SUPPLEMENTAL RESPONSE TO
GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE OF
DEFENDANT'S OTHER CRIMES AND BAD ACTS**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby files this Reply to Defendant Abraham's Supplemental

Response to the Government's Motion to Introduce Evidence of Defendant's Other Crimes and

Bad Acts ("govt's 404(b) motion").  In support of this pleading, the government respectfully

submits:

<u>Defendant's false statements in his SF85P are admissible under Rule 404(b).</u>

The indictment charges defendant with falsifying material information on numerous

occasions in his reports of background investigations ("ROI's") while working as a contract

investigator for the United States Office of Personnel Management, Federal Investigative

Services Division ("OPM-FISD").[1]  The government wishes to introduce, as 404(b) evidence, the

fact that defendant made false statements concerning his employment as a background

investigator in his own application for renewal of his security clearance ("SF85P").  As explained

more fully in the government's 404(b) motion:

---

[1]    Defendant was employed by various companies, including Kroll Government
Services ("KGS" or "Kroll"),  ManTech International Corporation ("ManTech"), and Systems
Application & Technologies, Inc. ("SA-TECH"), as an investigator under contract to conduct
background investigations on behalf of OPM.

Section 11 of the SF85P asked defendant to list all of his employment for the past seven years. He failed to list Kroll and SA-TECH, from which he was terminated based on his falsifications. Section 12 asked defendant if he had ever left a job under unfavorable circumstances. He answered "no."

Govt's 404(b) motion, at 7. As the government explained in its earlier pleading, defendant's false statements on his own security clearance application are admissible under Rule 404(b) because they are probative of defendant's knowledge and intent. These "glaring omissions and misstatements are further evidence of defendant's knowledge that some of his statements in reports of background investigations were false." Govt's 404(b) motion, at 7. As the government showed in its earlier pleading, the Court of Appeals in this Circuit has approved the admission of evidence of a defendant's other crimes, wrongs, or bad acts where it is offered for a permissible purpose, such as proof of knowledge or intent, and has held that, even in close cases, Rule 404(b) favors admission of the uncharged conduct evidence. See United States v. Pindell, 336 F.3d 1049, 1056 (D.C. Cir. 2003); United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990); United States v. Johnson, 802 F.2d 1459, 1464 (D.C. Cir. 1986).

Defendant argues that his answers in Sections 11 and 12 of his SF85P were not false, because he was employed by his own private investigation and consulting business, ARoGeo Services, Inc., not by Kroll, SA-TECH, or ManTech, and those contractors employed ARoGeo Services, Inc., not George Abraham. Defendant's Supp. Response, at 2-3. Thus, the argument goes, defendant was not required to list under "employment activities" the federal contractors for whom he worked as a background investigator and was not required to disclose that he had been terminated by Kroll and SA-Tech upon their discovery of his falsifications.

Defendant's argument ignores the fact that in Section 11 of his SF85P he listed ManTech

under "employment activities," but he did not list Kroll or SA-TECH, even though he worked as a contract investigator for all three companies.  In fact, defendant used his own name when contracting with Kroll and ManTech, not the name of his business.  See Subcontractor Engagement Agreement between Kroll and George A. Abraham, dated September 15, 2004 (Exhibit 1 hereto); Consulting Investigative Services Agreement Addendum between ManTech and George A. Abraham, dated September 22, 2004 (Exhibit 2 hereto); Consulting Investigative Services Agreement Addendum Modification between ManTech and George A. Abraham, dated October 18, 2004 (Exhibit 3 hereto).  Moreover, as a trained investigator, defendant knew that the definition of "employment activities" was broad and intended to cover all forms of paid work that accounted for his time, regardless of whether he was self-incorporated.  These documents clearly demonstrate that defendant's answer in Section 11 was intentionally false.  Defendant purposely omitted Kroll and SA-TECH from his list of employment activities for no other reason than both Kroll and SA-TECH terminated him following his removal from the OPM contract based on his falsifications, whereas ManTech did not.

The same logic applies to his false statement in Section 12 of his SF85P.  As a trained investigator, defendant knew that the purpose of that question was to elicit any possibly unfavorable employment history.  And, as of December 5, 2007, when defendant certified that his answers on his SF85P were true, complete, and correct, he knew that he had received notice that he was being terminated by Kroll and SA-TECH based on his falsifications.  As the July 19, 2006 letter from Kroll to George Abraham (Exhibit 1 to the government's 404(b) motion) makes clear, defendant was "suspended by OPM from working on the contract on 7/6/06, when case falsification was found on one of the cases [he] submitted" and, thus, Kroll was "mov[ing] to

terminate [his] contract."

To prevail on each count in the Indictment, the government must prove that defendant knew that his statements in his ROI's were false. Defendant's false statements on his own SF85P are highly probative of his knowledge and intent. To put it succinctly, "[d]efendant's false statements on his SF85P regarding his past employment demonstrate consciousness of guilt, reflect a deliberate attempt to conceal his wrongdoing from those conducting his background investigation, and make it more likely that the false statements he made on his ROI's were knowing, rather than accidental." Govt's 404(b) motion, at 7.

<u>Defendant's false statements on his SF85P may be used to cross-examine him under Rule 608(b).</u>

Defendant concedes that the above-mentioned statements in his SF85P may be used to cross-examine him, if he testifies. Defendant's Supp. Response, at 4.

<u>Conclusion</u>

For the foregoing reasons, the government respectfully requests that the Court grant the

government's motion to introduce, under Rule 404(b), evidence, which the government has

outlined, that defendant made false statements on his SF85P regarding his past employment.

Respectfully submitted,
Jeffrey A. Taylor
United States Attorney


   /s/
Ellen Chubin Epstein, DC Bar 442861
Thomas E. Zeno, DC Bar 348623
Assistant United States Attorneys
Fraud & Public Corruption Section
555 Fourth Street, N.W., 5th Floor
Washington, DC 20530
(202) 514-9832
Ellen.Chubin@usdoj.gov
(202) 514-6957
Thomas.Zeno@usdoj.gov

# EXHIBIT 1



900 Third Avenue
New York, NY 10022
Phone: 212-833-3239
Fax: 212-940-3743

Toll Free: 866-205-2938

## SUBCONTRACTOR ENGAGEMENT AGREEMENT

AGREEMENT dated as of   **9-15-04**   between Kroll Government Services, Inc., a Delaware corporation with its principal place of business in New York, New York ("Kroll"), and **George A. Abraham**("Contractor").

**WHEREAS,** as the parties may mutually agree from time to time, Kroll may retain Contractor on a non-exclusive basis to provide professional services, which services shall be governed by the terms and conditions of this Agreement.

**NOW, THEREFORE,** it is hereby agreed as follows:

### 1.    Services to be Provided by Contractor; Conflicts of Interest

a)    Contractor's services are to be of a quality consistent with the highest levels of Contractor's profession, and are to be performed within the time, budget and other parameters established by Contractor and Kroll.

b)    Contractor warrants that it will not, during the period of its engagement by Kroll, engage in work for any business, firm, company or entity, whether or not for compensation, that would constitute a conflict of interest with its work for Kroll. Contractor will notify Kroll within 24 hours if any conflict of interest arises during its retention by Kroll. Kroll, in its sole discretion, shall then determine if a conflict of interest exists. For the purposes of this Agreement, a "conflict of interest" includes, but is not limited to, a conflict between one's obligations to Kroll and one's own personal interests or the interests of one's family or other persons with whom one has business or personal relationships. A conflict of interest might deter one from acting in the best interests of Kroll or influence one to act in a way not in Kroll's best interests. Such conflict might arise from the opportunity of financial or other material gain but is not so limited. It includes the transmission of confidential information to others who may benefit thereby. The mere providing of federal background investigation services for businesses, firms, companies or entities other than Kroll, which have been awarded federal contracts or blanket purchase agreements shall not, in and of itself, constitute a conflict of interest.

### 2.    Contractor's Representations, Warranties and Acknowledgments

a)    Contractor warrants to Kroll that it will comply with all applicable laws and regulations in its performance of services under this Agreement. Contractor's submission of any invoice to Kroll shall constitute a representation to Kroll that services to which that invoice relates were performed in accordance with applicable laws and regulations. Contractor will indemnify Kroll (including its officers, employees and agents) against all claims, damages and costs (including reasonable attorney's fees and disbursements) resulting from any actions by Contractor constituting gross negligence or unlawful conduct.

c)   Contractor warran. . that it will not trade securities of any c.....pany on the basis of any material, non-public information it may have received while working for Kroll.

d)   Contractor represents that the Subcontractor Background Questionnaire completed by Contractor and returned to Kroll is true and correct in all material respects and does not omit any material facts. Contractor will promptly notify Kroll of any changes to such answers that might be required to continue to make such answers true, complete and correct in all material respects.

e)   In the event of a change in the ownership or control of Contractor's business, Contractor will notify Kroll in writing within 48 hours.

f)   To the extent that Contractor's engagement by Kroll requires it or any of its employees to be licensed as a private investigator or to be otherwise licensed (including licensed to operate an automobile), Contractor represents that they are licensed and that their licenses are valid and in good standing. If any such license or professional certification changes, whether by suspension, revocation, expiration or other cause, Contractor will notify Kroll verbally within 24 hours and in writing within 48 hours.

### 3.   Compensation and Expenses

Kroll shall pay Contractor those professional fees and shall reimburse it for those expenses as may be mutually agreed upon in advance by the parties. Contractor shall be paid at an hourly rate or equivalent hourly rate to be determined and conveyed to the contractor at the time of each assignment. Invoices will be paid no later than 30 days from the date it was received.

### 4.   Audit

For purposes of reasonably ensuring compliance with the provisions of this Agreement, Contractor agrees that, upon request of Kroll at any time during the term of this Agreement, Contractor will make available for audit by an accounting firm mutually acceptable to Kroll and Contractor, Contractor's books, records and other documentation related to its activities under this Agreement. A copy of the report thereon by such accounting firm shall be provided to Kroll. Kroll will pay any and all costs of any such requested audit.

### 5.   Duration of Agreement

a)   This Agreement may be unilaterally terminated by Kroll or Contractor at any time, for any reason whatsoever or for no reason at all, upon 30 days' prior written notice to the other party.

b)   In addition, either party may terminate this Agreement by written notice to the other upon the material breach by the other party, provided that the party wishing to terminate the Agreement gives the other party at least ten days notice of the alleged breach, and allows that party the ten-day period in order to cure the breach.

### 6.   No Authority to Bind Kroll

Contractor shall have no authority to bind Kroll contractually or in any other respect unless it first receives Kroll's express written authorization; any offer made or contract entered into by Contractor without such prior authorization shall not be binding on Kroll.

7.    Independent Contractor; No Agency or Employment Relationship

Contractor, in performance of this Agreement is acting as an independent contractor and not as an employee or agent of Kroll, and shall be solely responsible for the payment of worker's compensation, unemployment insurance and all other taxes or costs relating to services performed hereunder. Neither Contractor nor any of its employees shall represent itself to anyone as an employee of Kroll. Contractor acknowledges that its employees are not entitled to receive any employee benefits of any kind from Kroll.

8.    Disclosure and Confidentiality; Advertising and Publicity; Kroll Name and Logo

a)    Except to the extent required by law, Contractor shall not disclose to any other person (other than its attorneys or advisors) the existence of or any of the details of this Agreement.

b)    Contractor acknowledges that, because the nature of its engagement shall often involve highly confidential and sensitive information, its work for Kroll creates a relationship of trust and confidence between Kroll and itself. Contractor, therefore, agrees during the life of this agreement and following its termination as follows:

    (i)    to preserve the confidentiality and secrecy of and not directly or indirectly to reveal, report, publish, transfer, communicate or disclose any confidential or sensitive information in any manner whatsoever, except with the prior written consent of Kroll; and

    (ii)    not to use any confidential or sensitive information in any manner other than for the purpose of Kroll's business; and

    (iii)    to take all reasonable steps to ensure that access to confidential or sensitive information is appropriately restricted and that all precautions are taken to ensure that confidential or sensitive information is not in whole or in part disclosed without authorization or misappropriated.

    (iv)    to abide by any additional security and/or clearance requirements imposed by the nature of the assignment and conveyed to the Contractor.

"Confidential" or "sensitive" information includes but is not limited to:

    (i)    the identity of any of Kroll's clients, associates and independent contractors, and clients of Kroll's clients; and

    (ii)    the business practices and procedures, budgets, investments, plans, research, development, investigations, studies, contracts, resources and business dealings of Kroll, Kroll's clients and/or clients of Kroll's clients; and

    (iii)    information, written or oral, acquired directly or indirectly, during and in the course of Contractor's retention as an independent contractor to Kroll concerning the financial, corporate, political or personal affairs of any person, corporation or other entity.

Upon completion of each assignment and upon termination of this Agreement, Contractor shall promptly deliver to Kroll all property in its possession belonging to Kroll, including all confidential information and all information of any apparently confidential non-public nature such as photographs, tape

recordings, correspondence or notes, its own notes, reports, memoranda and other documents that it has acquired pursuant to or in the course of its engagement by Kroll and relating to such engagement, whether or not legally the property of Kroll. Contractor further agrees not to retain any copies of such property (other than copies of public records or other publicly available information), whether for itself or any other person or entity.

If a person or entity requests, subpoenas, or otherwise seeks to obtain any testimony or materials within the custody or control of Contractor or of any of its employees, agents, representatives or others working under its direction, that relate to or refer in any way to its work under this Agreement, Contractor shall immediately inform Kroll. Should Kroll so request, Contractor will cooperate in legal action to seek protection against disclosure. In such cases, Kroll will, at its expense, retain legal counsel satisfactory to Kroll to represent Contractor and/or any other applicable parties in the matter, and will compensate Contractor and/or the applicable parties for reasonable fees and expenses incurred in such legal proceedings. Unless and until legally compelled by court or other competent authority or permitted by Kroll in writing to do so, Contractor will not testify or disclose or transmit any materials to anyone.

c)   Contractor shall not publish, seek to publish, submit for publication, or otherwise cause to be published in its name, under a pseudonym, in another's name, or otherwise any writing, fiction or non-fiction, which contains a description of its work for Kroll, anyone else's work for Kroll, the practices and procedures of Kroll, or any subject covered by this Agreement.

9.   **Notices**

Unless notice to the contrary is given to the other party, notices (other than communications regarding specific assignments being performed by Contractor for Kroll) shall be sent to Contractor to Kroll at Kroll Government Services, Inc., 900 Third Avenue, New York, New York 10022, Attention: General Counsel. Any notice provided hereunder by a party shall be effective upon receipt by the other party.

10.   **Entire Agreement**

This Agreement (together with the Statement of Business Ethics and the Subcontractor Background Questionnaire completed by Contractor) shall constitute the entire agreement between Kroll and Contractor, and shall supersede any and all prior agreements and understandings, whether written or verbal.

11.   **Governing Laws**

This Agreement shall be governed by and construed in accordance with the laws of New York (without giving regard to that jurisdiction's choice of laws and principles).

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

| | Kroll Government Services, Inc. |
|---|---|
| By: _~B. A. Abl~_ | By: _____ |
| Name: _George A. Abraham_ | Name: _____ |
| Title: _Contractor_ | Title: _____ |
| Date: _9-15-04_ | Date: _____ |



Please provide the following information to Kroll Government Services for your record:

1. Auto Insurance is held with __Cincinnati Insurance__
2. Policy number __HRA8797971__
3. Expiration of Policy __3-31-05__
4. Limits of Liability Coverage $__500,300,100__
5. Make, Year, Model, Tag #
   /State __2004 GMC ENVOY__

EMERGENCY CONTACT INFORMATION:

1. Contact in the event of an emergency: __Robyn L. Abraham__
   Telephone: __678-372-9824__

PLEASE ATTACH A COPY OF YOUR CURENT AUTO INSURANCE CARD FOR THE VEHICLE(S) YOU PLAN TO USE IN THE PERFORMANCE OF YOUR WORK FOR KROLL GOVERNMENT SERVICES. PLEASE NOTE, IF YOU CHANGE VEHICLES PLEASE FORWARD YOUR CURRENT AUTOMOBILE INFORMATION TO THE PROJECT MANAGEMENT OFFICE (PMO)



**Kroll Gove.. .ment Services**
**5200 Hahns Peak Drive**
**Loveland, CO. 80538**

PERSONAL SKILLS INVENTORY LIST: (check items that apply)

✓Case Review Experience

__Polygraph Certification

__Testimony Certification

__Kensic Training/Certification

✓Private Investigator Lic: What state(s): *G A*

__Adjudications/LOI experience/Mgt

__Forensic Investigations

✓Executive Protection

__EEO Investigations

__Suitability Investigations

✓Missing Persons Investigations

✓Fraud Investigations (civil, criminal {internal})

__Forensic Accounting

__Financial Investigations (criminal and civil)

✓Foreign Language Skills

     What languages: *Greek*

       *Speak*
      -____ read;____ write ____ both

__Sign Language (list type)

__Other Licenses (i.e. pilot)

✓Interrogation Training/Certification

__Computer Certifications

__Data Recovery

__IRS Investigations

__Covert OPS Training

✓Self Defense Training

*Accident Reconstructions*
*Law Enforcement Instructor*
*Criminal Investigations*



**Kroll Government Services
5200 Hahns Peak Drive
Loveland, CO. 80538**

The Risk Consulting Company

## EMPLOYMENT CERTIFICATION

I hereby certify the following (check all that apply):

I have never worked as either a full-time employee, part-time employee or contractor for US Investigations Services, LLC, US Investigations Services, Inc., US Investigations Services, L.P. and/or USIS Investigations Services, L.P. (collectively, "USIS").

I have worked/am working as a full-time employee or part-time employee for USIS or any other vendor providing background investigative services to the federal government. The employers and dates of my employment were/are:

EMPLOYER:                                    DATES OF EMPLOYMENT:

_____          _____

_____          _____

_____          _____

(ATTACH ADDITIONAL PAGES IF NECESSARY; CHECK HERE IF ADDITIONAL PAGES HAVE BEEN ADDED: _____ )

I have attached a copy of my employment contract and/or any other agreement(s) that may contain prohibitions on my future employment, such as a non-solicit, non-compete and/or non-piracy agreement, and a copy of my resignation letter, if available, with each employer. In the absence of such, I have signed and had notarized the lower portion of this form.

~ *commercial*

I have worked/am working as a contractor for USIS or any other vendor providing background investigative services to the federal government. The vendors and dates of such services were/are:

VENDOR:                                        SERVICE DATES:

*ManTech*                                    *MAR-2001 to Present*

*CSC*                                            *2004 to Present*            *FEDERAL*

*OMNISEC*                                  *2002 to Present*

(ATTACH ADDITIONAL PAGES IF NECESSARY; CHECK HERE IF ADDITIONAL PAGES HAVE BEEN ADDED: _____ )

I have attached a copy of the contract covering my services and/or any other agreement(s) that may contain prohibitions on my future employment, such as a non-solicit, non-compete and/or non-piracy agreement, and a copy of my resignation letter, if available, with each vendor. In the absence of such, I have signed and had notarized the lower portion of this form.

_____          *George A. Abraham*    *9-14-04*
Signature                                      Print Name                      Date



**Kroll Government Services**
**5200 Hahns Peak Drive**
**Loveland, CO. 80538**

*Complete the following if you have never been subject to any employment contract(s) and/or other agreement(s) that contain prohibitions on your future employment, such as a non-solicit, non-compete and/or non-piracy agreement, or if you are unable to locate any such employment contract(s) and/or other agreement(s) and/or your resignation letter with each employer and/or vendor.*

I hereby affirm that I have worked as a full-time employee, part-time employee or contractor with either USIS or another vendor providing background investigative services to the federal government and that (check all that apply):

☑  I have never been bound by any employment contract and/or other agreement that contains prohibitions on my future employment, such as a non-solicit, non-compete and/or non-piracy agreement with said company.

___  I am unable to locate any employment contract and/or other agreement that contains prohibitions on my future employment, such as a non-solicit, non-compete and/or non-piracy agreement with said company.

___  While I may previously have been bound by an employment contract and/or other agreement with said company that contains prohibitions on my future employment, such as a non-solicit, non-compete and/or non-piracy agreement, I am no longer bound by any such employment contract and/or other agreement.

_____          George A. Abraham    9-14-04
Signature                         Print Name                    Date

Sworn to before me
this __14__ day of __Sep__, 2004

_____
Notary Public

# EXHIBIT 2



Consultant Social Security or ID Number 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

## CONSULTING INVESTIGATIVE SERVICES AGREEMENT ADDENDUM

**CONTRACT NAME:  U.S. OFFICE OF PERSONNEL MANAGEMENT (OPM)**

ManTech MSM Security Services Inc (MMSM), a Maryland corporation (hereinafter referred to as " MMSM") having an office and place of business at 7515 Mission Drive, Lanham, Maryland 20706 and George A Abraham (hereinafter referred to as "CONSULTANT") having an office and place of business at 455 Grayson Hwy Suite 111-119 Lawrenceville GA 30045-    agree to the following additions or modifications to the Primary Consultant Investigative Services Agreement (" the PCISA") for work performed on the U. S. Office of Personnel Management (OPM) Contract. This Consulting Investigative Services Agreement Addendum ("ADDENDUM") is the controlling document where there is any conflict in terms with the PCISA.

**WITNESSETH:** That the parties hereto mutually agree as follows:

## ARTICLE I – ENGAGEMENT.

1.      This engagement is contingent upon the approval of the CONSULTANT by OPM. CONSULTANT shall furnish professional Consultant investigative services to MMSM in the pursuit of conducting Personnel Security Investigations (PSIs) in accordance with the OPM contract.

## ARTICLE II – TERM OF ADDENDUM

1.      This ADDENDUM shall commence on September 22, 2004 and shall continue up to and including September 20, 2006, and may be extended for such additional period of time as may be mutually agreed upon in writing by the parties hereto.

## ARTICLE III – PERFORMANCE

1. By placing initials in one of the following  CONSULTANT agrees to complete (1) 1 to 5 leads weekly or up to 25% of CONSULTANT'S work time _____, (2) 6 to 10 leads weekly or 26% to 50% of CONSULTANT'S work time_____, or (3) 11 to 25 or more leads weekly, or 51% to 100% of CONSULTANT'S work time _JAK_. CONSULTANT agrees to become knowledgeable and follow all policies, procedures, professional and ethical standards contained in the OPM handbook, pertaining to conducting personnel security investigations. MMSM agrees to ensure CONSULTANT is issued and maintains a current copy of such OPM handbook.

2.      CONSULTANT agrees to submit all reports and case related information through the OPM Personnel Investigations Processing System - Reporting (PIPS-R), unless

directed otherwise by MMSM. CONSULTANT agrees to submit invoices in conformance with the PCISA when assignments are completed.

3.    CONSULTANT acknowledges investigative leads are due within fourteen (14) calendar days of receipt by CONSULTANT, unless MMSM executes written consent to extend prior to the due date. CONSULTANT agrees to seek said consent from a duly appointed representative of MMSM as indicated on MMSM's assignment sheet prior to due date if CONSULTANT anticipates inability to meet such due date.

4.    CONSULTANT acknowledges and agrees that if CONSULTANT fails to obtain prior permission to extend due date of investigative leads(s), as shown in provision (3) of Article III of this ADDENDUM, MMSM reserves the right to reduce consideration paid to CONSULTANT by two percent (2%) per day for each day CONSULTANT has a lead(s) past due, up to a maximum of twenty percent (20%)

## ARTICLE IV. – INVESTIGATOR STATUS

1.    As required by OPM, CONSULTANT agrees to notify MMSM as soon as practicable, but no later than three (3) calendar days after CONSULTANT experiences any of the following personal life events:

A.    Arrests, charges (including charges which are dismissed), or detentions by Federal, state, or other law enforcement authorities, for violation of any Federal, state, county, or municipal law, regulation, other than traffic violations for which a fine of $250 or less was imposed

B.    Filing for bankruptcy

C.    Liens or judgments placed against CONSULTANT

D.    Becoming a party in any civil action

E.    Security violations

F.    Changes in name or marital status

G.    Involuntary termination form any employment

H.    Treatment sought for alcohol or drug use or emotional/mental problems

I.    Travel outside the United States

J.    Loss of government supplied equipment (e.g., credentials, hard drives, etc.)

K.    Residence with any foreign national

L.    Contact with any foreign national not previously admitted to OPM

## ARTICLE V - CONSIDERATION

1.    In consideration for the above services, MMSM shall pay the CONSULTANT at the rate of $35.00 per point for leads conducted. Lead points will be calculated by MMSM at time of assignment as designated in the following schedule:

| | | |
|---|---|---|
| A. | Record Checks (Divorce, Bankruptcy, Judgments/Civil Suits, Employment/Military, Education, Rent, Medical) | 1 point |
| B. | Reference Interviews (Education, Employment, Listed, Developed, Former Spouse, Neighborhood Self-Employment, Unemployment) | 1 point |
| C. | Subject Interview | 3 points |
| D. | Special Interview (SPIN) | 4 points |
| E. | Arrest Records – Law Enforcement and Court inquiries assigned in batches of 10 or more at one Police Department, when results are "no record" | $ 6.50 ea |
| F. | Arrest Records - Law Enforcement and Court inquiries less than 10, when results are "no record". | $10.00 ea |
| G. | Arrest Records – Law Enforcement and Court inquiries when criminal record identified | 1 point |
| H. | Total invoice travel divided by 15 miles x .25 | .25 point (per 15 mile) |

MMSM will assign up to 2 points additional lead points per lead when justified by complex issues. CONSULTANT will document invoice when requesting additional points due to information developed by CONSULTANT.

2.    CONSULTANT acknowledges that other than as specified above, compensation for travel time  and report writing is included and accounted for in lead points and CONSULTANT agrees to not invoice separately for such time expended.

3.    CONSULTANT agrees to invoice MMSM for investigative services through use of Microsoft Excel electronic voucher provided CONSULTANT by MMSM. The Consultant shall present an invoice for professional services with each completed case and associated report.

Each invoice, accompanied by Investigative Notes, shall be submitted within time frame allotted for lead(s) completion per Article III, Paragraph 3 of this ADDENDUM to:

ManTech MMSM Security Services Inc.
7515 Mission Drive
Lanham, MD 20706

ManTech MMSM shall reimburse the Consultant within 30 days upon receipt of acceptable invoice for completed work.

4.      CONSULTANT agrees to not invoice MMSM for any rework time and expenses stemming from CONSULTANT's deficient work product.

5.      The CONSULTANT may incur reasonable expenses in the course of its engagement by MSM for which CONSULTANT shall be reimbursed or otherwise compensated, as described in Article III, provision 3 of the PCISA.


## ARTICLE VI –TOOLS AND MATERIALS

1.      In accordance with OPM requirements, MMSM agrees to provide CONSULTANT with a pre-configured laptop computer dedicated solely to the OPM contract, for CONSULTANTS who commit to devote 50% or more of their work time on OPM related work assigned by MMSM. CONUSULTANT agrees to use any computer equipment provided by MMSM solely for MMSM related work.

2.      CONSULTANT agrees to assume sole responsibility for any computer equipment provided by MMSM including payment to MMSM for full replacement value or any equipment that is lost or stolen. CONSULTANT agrees to return to MMSM all such equipment within three (3) business days upon termination of this ADDENDUM, voluntary or involuntary, as instructed by MMSM. MMSM reserves the right to withhold the replacement value of such equipment from amounts invoiced by the CONSULTANT for failure of the CONSULTANT to timely return such equipment.  Should the amount invoiced at the time of termination of this ADDENDUM be less than the replacement value of equipment, CONSULTANT expressly agrees to repay MMSM the remainder within thirty (30) days.

## ARTICLE VII – CUSTOMER CONFIDENTIAL INFORMATION

All memoranda, notes, records or other documents made or compiled by the CONSULTANT or made available to the CONSULTANT during the term of this ADDENDUM concerning the business of MMSM and/or investigations for which MMSM engaged the CONSULTANT shall be the property of U. S. Government and shall be delivered to MMSM on the termination of this PCISA or at any other time on request. CONSULTANT shall not use for CONSULTANT, or for any third parties, any data of MMSM obtained as a result of such engagement, unless previously authorized in writing by MMSM.

## ARTICLE VIII - INFORMATION SECURITY

CONSULTANT agrees to adhere to OPM provisions as detailed on Attachments A and B. MMSM shall brief CONSULTANT as to the security controls and procedures applicable to the CONSULTANT'S performance and shall execute the Consultant Security Certificate as attached to the PCISA as Attachment A.

## ARTICLE IX – FREEDOM OF INFORMATION /PRIVACY ACT PROVISIONS

CONSULTANT agrees to adhere to OPM provisions covering Freedom of Information (FOIA) and the Privacy Act as detailed in Attachment A.

## ARTICLE X – TRAINING

1.     CONSULTANT acknowledges that as directed by OPM requirement, CONSULTANT agrees to attend an OPM approved training course prior to receipt of credentials and work assignments. Such training will be provided by and MMSM pertaining to the use of OPM PIPS-R system as well as OPM policies and procedures. MMSM agrees to reimburse CONSULTANT for travel expenses to and from the training site as designated by MMSM, with the exception that CONSULTANT will not be compensated for travel or training time. MMSM agrees to also reimburse CONSULTANT for the cost of per diem and lodging expenses, at a location designated by MMSM and at rates reflected in the current U.S. Government Joint Travel Regulations, in the event CONSULTANT resides outside a fifty (50) mile radius of the training site. CONSULTANT acknowledges CONSULTANT is an independent contractor and understands CONSULTANT will not be reimbursed for training or travel time.

## ARTICLE XI– CLEARANCES/CREDENTAILS

1.     MMSM acknowledges that the CONSULTANT must maintain a current security clearance at a level determined by OPM and MMSM, and agrees to assume all responsibility for costs related to such clearance, whether initial or periodic update, regardless of whether the CONSULTANT subsequently withdraws from the process or is ultimately disapproved.

2.     CONSULTANT acknowledges CONSULTANT will only use OPM issued credentials for any and all work performed pursuant to this ADDENDUM and CONSULTANT understands that use of any other credential for such work is expressly prohibited by OPM. CONSULTANT also acknowledges and understands CONSULTANT is expressly prohibited from using OPM issued credentials for any work other than that related to OPM

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT as of the day and year first above written.

CONSULTANT

Signature

George A Abraham

CONSULTANT

Date:

MANTECH MMSM SECURITY SERVICES INC.

Signature
Joseph Palazzo
Director of Field Operations

Date: September 22, 2004

**Attachment A**
ADDENDUM CONSULTING INVESTIGATIVE SERVICES AGREEMENT (OPM)
Modified excerpt from Blanket Purchase Agreement No. ADDENDUM
AGREEMENT040400015
Page 31 and 32 (partial)

## A 7.5 INVESTIGATIVE REPORTS

**A.7.5.4**        Investigative reports, attachments thereto, and information gathered by the CONSULTANT during the conduct of the investigations are the property of the Government and shall not be used for any purpose other than the investigation authorized by the Government. All include investigators' notes are considered For Official Use Only (FOUO), unless classified, and, except as specified below, shall be protected and destroyed by the CONSULTANT in accordance with authorized OPM standards or other applicable appropriate standards.

**A.7.5.5**        Title to all materials and work in process acquired or produced by the CONSULTANT for performance under this ADDENDUM AGREEMENT and chargeable thereto as well as title to all source data information and materials furnished to the Government, together with all plans, systems analysis and design specifications and drawings, completed programs and documentation thereof, reports and listings, all tapes, disk files and all other items pertaining to the work and services to be performed pursuant to the agreement, including any copyright, will become and/or remain with the Government upon completion of this ADDENDUM AGREEMENT. The Government will have the full right to use each of these for its purposes without compensation or approval on the part of CONSULTANT.

**A.7.5.6**        All materials furnished to and/or maintained or developed by the CONSULTANT in connection with performing work under this ADDENDUM AGREEMENT  (operational instructions, reference material, investigative personal or record testimonies, source lists, etc.) will be the property of OPM. Likewise, OPM will not release any of the CONSULTANT's information or data internal or proprietary to any third party, excluding certain Federal agencies, without the express written permission of the CONSULTANT.

**A.7.5.7**        Hard copy records, which document actionable issues, such as court documents, arrest records, termination notices, etc., shall be obtained and furnished to MMSM immediately as attachments to the report, per the guidelines of the Investigator's Handbook. The CONSULTANT shall maintain a copy of the document with other case material and then destroy the document in accordance with Section A.7.11.1.

**A.7.5.8**        The CONSULTANT shall accurately report the source of all information in the ROI. If databases are utilized vice obtaining information directly from appropriate law enforcement agencies, the ROI shall identify the database utilized as well as the law enforcement agencies or courts whose information is contained therein.

**A.7.5.9**        The CONSULTANT shall ensure that all media and data files transmitted to OPM are virus scanned and virus free to the best of the CONSULTANT's ability. The report format used will be that contained in and generated by OPM's PIPS. All reports and related documents prepared by an investigator and submitted to OPM must be computer generated, in the prescribed format, with acceptable style and grammar.

**Attachment B**
ADDENDUM CONSULTING INVESTIGATIVE SERVICES AGREEMENT (OPM)
Modified excerpt from Blanket Purchase Agreement No. ADDENDUM
AGREEMENT040400015
Page 34 and 35 (partial)

## A.7.11 INFORMATION SECURITY

**A.7.11.1**     All ROIs, attachments to ROIs, investigators' notes, documents, and other materials in which investigative information is collected, stored or reported, are For Official Use Only (FOUO), unless classified, and, except when specified, shall be protected and destroyed (when directed by the COR) by the CONSULTANT in accordance with PCISA, this ADDENDUM AGREEMENT, OPM policy, the Privacy Act of 1974, as amended (5 U.S.C. 552a), and the National Industrial Security Program Operating Manual (NISPOM), if they are classified above the FOUO level (i.e., SECRET and TOP SECRET). The disposal of information the disclosure of which is governed by the Privacy Act of 1974, as amended (5 U.S.C. 552a) by any means other than an approved shredder is prohibited.

**A.7.11.2**     All computer hard drives/writeable CDs/floppy disks used in the performance of work under this ADDENDUM AGREEMENT and which contain FOUO information and/or information the disclosure of which is governed by the Privacy Act of 1974, as amended (5 U.S.C. 552a), shall be overwritten or degaussed, as appropriate, to remove such information using a utility/method approved by OPM through the COR. This procedure must be completed before considering a hard drive/writeable CD/floppy disk to be free of FOUO/Privacy Act protected information and therefore no longer requiring protection as FOUO/Privacy Act protected information. Hard drives containing FOUO/Privacy Act protected information shall not be sent off-site for repairs.  Further guidance pertaining to the removal/destruction of FOUO/Privacy Act protected information from electronic media can be obtained from OPM. This requirement applies to computer hard drives/writeable CD/floppy disks owned or used by the CONSULTANT in the performance of work under this ADDENDUM AGREEMENT. The CONSULTANT shall certify to the degaussing of such drives/disks at the end or termination of this ADDENDUM AGREEMENT, and when a subcontractor, consultant or other person performing work under this ADDENDUM AGREEMENT ceases to perform said work and/or when a business relationship with the CONSULTANT is terminated.

**A.7.11.3**     Classified information shall not be processed on a personal computer, word processor, or memory typewriter or reported over non-secure telephone or other communications lines. Classified information also shall be transmitted in accordance with OPM Investigator's Handbook. Where classified information is incorporated into written documents or when discussed in person, these documents or discussions must be clearly marked/identified, shared only with personnel having the verified appropriate clearance and need to know, and protected from unauthorized disclosure.

**A.7.11.4**     Computer communications including e-mail messages and attachments containing investigative information (to include names or SSNs) shall be conducted via a system approved by OPM. Any case specific information and messages shall be transmitted via PIPS only.

## A.7.12  FREEDOM OF INFORMATION/PRIVACY ACT PROVISIONS

**A.7.12.1**        Privacy Act Notification- During background investigation interviews CONSULTANT will advise each person interviewed and each custodian of records contacted that all information provided, including the source's identity, may be disclosed to the individual being investigated upon that individual's request. However, the source's identity must be withheld if the source requests confidentiality, and CONSULTANT expressly grants the request for confidentiality.

**A.7.12.2**        Safeguarding Information OPM regulations require safeguarding information about individuals. The CONSULTANT shall provide acceptable secured capability for investigative materials. All materials, including investigative notes and computer files, must be locked in a secured area when not under the direct supervision of CONSULTANT.

# EXHIBIT 3

CONFIDENTIAL

Consultant Social Security or ID Number 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

## CONSULTING INVESTIGATIVE SERVICES AGREEMENT
## ADDENDUM
## MODIFICATION

**CONTRACT NAME:**  **Office of Personnel Management (OPM)**

ManTech MSM Security Services Inc (MMSM), a Maryland corporation (hereinafter referred to as " MMSM") having an office and place of business at 7515 Mission Drive, Lanham, Maryland 20706 and George A Abraham  (hereinafter referred to as "CONSULTANT") having an office and place of business at 455 Grayson Hwy Suite 111-119 Lawrenceville GA 30045-    agree to the following additions or modifications to the Primary Consultant Investigative Services Agreement  (" the PCISA") for work performed on the OPM Contract. This Consulting Investigative Services Agreement Addendum ("ADDENDUM MODIFICATION") is the controlling document where there is any conflict in terms with the ADDENDUM AGREEMENT AND/OR THE PCISA issued August 19, 2004.

**WITNESSETH:** That the parties hereto mutually agree to the following modification:

**ARTICLE IV – CONSIDERATION**  is modified as follows:

G.      Total invoice travel divided by 15 miles x .25 point                    .25 point (per
          x lead rate                                                                                      15 miles)

3.      CONSULTANT agrees to invoice MMSM for investigative services through use of Microsoft Excel electronic voucher provided CONSULTANT by MMSM. The Consultant shall present an invoice for professional services with each completed case and associated report.

Each invoice, accompanied by Investigative Notes, shall be submitted within time frame allotted for lead(s) completion per Article III, Paragraph 2 of this ADDENDUM to:

ManTech MMSM Security Services Inc.
7515 Mission Drive
Lanham, MD 20706

ManTech MMSM shall reimburse the Consultant within 30 days upon receipt of acceptable invoice for completed work.

5.      The CONSULTANT may incur reasonable expenses in the course of its engagement by MSM for which CONSULTANT shall be reimbursed or otherwise compensated, as described in Article III, provision 2 the PCISA.

1

**ARTICLE XI– CLEARANCES/CREDENTAILS** is modified as follows:

1.      MMSM acknowledges that the CONSULTANT must maintain a current security clearance at a level determined by OPM.  MMSM agrees to assume all responsibility for costs related to such clearance, whether initial or periodic update, regardless of whether the CONSULTANT subsequently withdraws from the process or is ultimately disapproved.

**IN WITNESS WHEREOF,** the parties hereto have executed this AGREEMENT as of the day and year first above written.

CONSULTANT

Signature

George A Abraham

CONSULTANT

Date: October 19, 2004

MANTECH MMSM SECURITY SERVICES INC.

Signature

Joseph Palazzo
Director of Field Operations

Date: October 8, 2004